Good morning. May it please the court, my name is Paul Patton. I represent the appellants Mary Hill. The essential issue in this case is whether or not the presumptively unreasonable search of my client's home without a search warrant can be said to be reasonable based on the totality of the circumstances under any exception to the Fourth Amendment search warrant. So let's talk about the Emergency Aid Doctrine. You're heading in the right direction. On the Emergency Aid Doctrine, Your Honors, first of all, even if one assumed that the issuance of the Section 35 warrant... Let's not assume that it's per se. Put that in perspective. You have to take into account the warrant. Well, under the totality of the circumstances, as they stand in the record, the judge who issued the warrant had taken evidence from an eyewitness, that is, Amanda Hill, that her brother, Matthew Hill, was at the hospital, had been brought there the night before by the Taunton police. That judge took that evidence and put it right on the face of the warrant in a very prominent place, currently at Lawton Hospital. The police, as a result, when they received that warrant, they claim, we didn't see it. We didn't see that notation. Well, it wasn't an off-the-cuff notation, by the way. It's very specific. And the very fact of them claiming that they did not see it, in itself, does not show that there's no material issue of fact as to whether or not they saw it or not. If anything, what that would raise, normally, at the least, would be there's an issue of fact here to be decided by the trier of fact, whether they saw it or didn't see it. However, in this particular case, given the prominence of that notice on this warrant, my argument is that this actually meets the type of situation of the videotape in Scott v. Harris, that no rational jury could find that these police officers who viewed this warrant did not see that notification. Now, again, short of that, it would be, at least, a material issue of fact to be decided by the trier of fact, and which, for purposes of summary judgment, is to be taken in favor of the non-moving party, which, again, are the appellants here. Well, in terms of the totality, the sister also gave an incorrect address for the brother. The police had less than an hour to serve it, and it was deemed to be an emergency situation. Well, the situation with that, as far as the address, sure, she gave the parent's home address. However, the judge who issued it told them he's at Morton Hospital. They did nothing to call there, to make any inquiry there, to see is he there, is he left there. They had no evidence whatsoever that he had left and gone to that address. There's also, by the way, evidence here that they would have had noticed that he also had another address, 44 Weir Street, and when you look at Officer Henoch's testimony, he was the patrol supervisor at the beginning of the shift, according to Henoch, according to Chief Walsh, refused the police brother from the two previous shifts, which included the entry in the brother about Mr. Hill having been taken to Morton Hospital the day before, and with his address at 44 Weir Street, and Henoch also personally knew that he had been living at that address. Now, the point of the address in the warrant itself, one cannot do that, no, take that, that there's notice there that this is his home address. That doesn't answer the question. The question becomes, do they have objectively, objective facts that he is in that home? Yet the only thing they had was the notice from a judge that he was at Morton Hospital. Well, that wasn't the only thing. I'm sorry? That wasn't the only thing. You want us to discard the fact that there was testimony about looking through the window and seeing the curtain, but that's still evidence. This comes after, Your Honor, and what happens is there are two problems with that. One is the credibility issue, because when you look at Officer Henoch's testimony as, well, why was he asked? Why didn't they contact Morton? He testified that the practice, and I have a quote in my brief, that the practice within one of these police offices is not even to read the body of the warrant. Officer Marks, and I would suggest that that statement itself raises a credibility issue as to whether or not he can be believed at all, because of the prominence of this notice on that warrant. Because, again, I do not think it is physically possible to read that address in the caption. Sorry. You're not responding to Judge Thompson's point. They get to the house. They don't actually enter the house until they think they see some movement within the house, which tends to reinforce that he is at the address that was on the state court warrant. So don't we have to take that into effect as well? I think, Your Honor, what I'm getting at is that statement that they saw anything when they looked in there itself presents a credibility issue. I thought you were arguing we don't even get there because the warrant had his present location. The matter ends there. Is that what you're arguing? Well, I certainly argue that they were required, if they were going to go to the house at all, to have made that inquiry to the hospital. When they don't do that, they go to the house. Even if they've seen it, they don't know whether he's been released or not, and they're told his home address is actually the wrong address, the parent's address. And that is what I'm saying, that when they get there, they don't have any idea what they're seeing. They don't see anything. And when they go on to the property, they're going on there in violation of Jareem's, because they go on that property, and they look through that window after they knock at the door, nobody answers, and they look through the window. That, that, that is the privilege. But even when they look in the window, he now says, for a split second, I see a silhouette. We don't know what that is. He can't even describe it as a person. He couldn't describe it at all. That was his answer. Well, for a split second, I saw a silhouette. And I think throughout the record here, as I've argued in my brief, there are multiple points of credibility issues as to the truth of anything that is said here as to what they saw. I think there are credibility issues on the part of Hinolt, because of the inconsistency of his testimony as to why he didn't even see the notice on the warrant, which he had with him when he was down the house. I think there are credibility issues between what Hinolt, the chief, I think that there are credibility issues on the overall description of the police report, in the police report. That the very fact that the warrant said that Mr. Hill was at Martin Hospital was left out of that police report by the chief, who had a warrant that said that Mr. Hill was at the hospital. I see my time is up. Is this a subrogation case? No, it's not. There was insurance in this, but the insurer informed me that they were not seeking subrogation on it. Thank you. Good morning, I'm Daniel Diabro for the City of Taunton and the Police Officer Defendants. Speak up, please. Yes, Your Honor. The Fourth Amendment, as a general rule, requires that a warrant be obtained before a non-consensual entry into a house. There are, however, exceptions to that requirement. Among those permitted here would be the emergency aid exception, community caretaking, and the special needs exception to the warrant requirement. The community caretaking exception speaks to the wide variety of activities that police officers engage in that are of a community caretaking nature, and it requires that the actions be totally divorced from the detection, investigation, or acquisition of evidence of violation of a criminal statute, which is, of course, exactly... I thought you were relying more heavily on emergency aid. Yes, Your Honor. The emergency aid doctrine permits the police to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be somebody inside who is in danger of physical harm. In this case, the police had the issuance of the warrant itself... Since there was a Section 35 warrant issued, why didn't they carefully read it to make sure they knew where this person was located, particularly since he had to be brought before the court within an hour? Yes, Your Honor. They looked at it. They saw the name. They saw the address. More importantly, they saw the address. It's in bold letters where he is. It's in less bold letters what the address is. Yes, Your Honor, but the address is written... Did the police ignore bold letters on warrants? Not intentionally, Your Honor. Not anymore? Of course, Your Honor. But the address was written in that portion of the warrant where the investigation... You know, it's pretty hard to read the warrant and read the address without reading the bolded letter that he was in the hospital. After the fact? Certainly, Your Honor. No, before the fact. Well, the evidence on the record is that it was not seen and that it's uncontroverted. There's also... No, no, he's controverting it. He's saying your officers are lying. They did see it. They just disregarded it. I would submit that that does not rise to a genuine issue. Why not? Because there's no evidence to the contrary. Had the jury disbelieved your officers on it? Yes, the Hills themselves and their daughter all testified they could come up with no reason why the officers wouldn't have gone in there but in an effort to help Matthew. There's also on the record the warrants for the one-year period prior to the warrant at issue. And none of those did the court put in the format that it was in the incident case. In each of those, the warrant hospital was either written in that place in the warrant that was designated for the location of the person or there was a handwritten notation. And the undisputed testimony in this case is that because it was in a print format, it just was not observed. And I would suggest that, again, to the extent that there's... So I'm interested in the qualified immunity argument. What is your argument there? I know the district court just deals with it in a footnote. The qualified immunity of the defendant's police officers would be entitled to qualified immunity because it cannot be said that no reasonable officer would have thought that their conduct was illegal. Going back to the notation of the warrant, if I may, again, I would suggest there's no genuine dispute that the words were not seen. And the analysis under the emergency aid context is based on what the officers knew. It is an objective analyst who knew what the officer knew would have thought. And in a herd, it's not what a reasonable officer would have known. It is what a reasonable officer would have thought given the facts known to him. So to the extent that there's a suggestion that it's uncontroverted, that they didn't see it, but they should have, I would suggest that that's not the proper analysis under the emergency aid exception. It is what the actual knowledge was, and their actual knowledge is uncontroverted. However, even if the court were to go to that next step and engage in an analysis of whether it was reasonable for them not to see it, I would suggest it still does not render the entry under the emergency aid exception outside of the parameters of the Fourth Amendment. Because if faced with two options, then going to the address of the person on the warrant cannot be said to be an unreasonable course of action. And again, the officers are required to act in a reasonable manner, not necessarily an ideal manner. Would it have been ideal? Well, you know, I'm not sure why you keep arguing the merits of the Fourth Amendment as opposed to qualified immunity. Yes, Your Honor. Again, I would suggest it's for many of the same reasons, but they would be entitled to the qualified immunity defense. The case law speaks of community caretaking. It speaks of emergency aid exceptions, exception to the warrant requirement, exigent circumstance, exception to the warrant requirement in a non-criminal context, having a relaxed probable cause requirement. And I would suggest that in this case, it is not clear, that the case law is far from clear that an officer in this circumstance could not take the actions that these officers took. They had the warrant. Putting the notation aside, they went to the address on the warrant. They made the observations that they made in which they believed was a person hiding from them. I think that those observations, the door was unlocked. Those observations should be evaluated and the reasonableness of their conclusion should be evaluated in the context of warrants of apprehension. There's evidence in the record that when dispatching for a warrant of this type, they do not say the name of the person because the person would often hide. It's in the very essence of the issuance of a warrant that the person was not going to voluntarily go to court. So having that information, I don't think it could be said that no reasonable officer would have believed their actions in this case to be constitutional. So Judge Stearns, in his little opinion, helpfully points out that there has been an apparent discrepancy between state law and federal law on whether the officer's reasonable belief, I'll use the shorthand, needs to be akin to probable cause or not. And that it would be helpful for us to clarify that. The state high court has said no, it doesn't have to be probable cause, but there's a line of our opinions that say approximating probable cause. Are you arguing that that is one of the sources of ambiguity here about whether the law was clearly established? Yes, Your Honor. So are you conceding that they didn't have probable cause, but they had a reasonable belief? I would say they had a reasonable belief. What I would say is this. I know that my brother argues about paying under a criminal context, criminal arrest context. And I would say this is not that case. This is emergency aid. This is community caretaking. And in that context, they had a reasonable belief. So what's the difference between emergency aid and community caretaking? I would say in some cases it's hard to distinguish, Your Honor. Community caretaking might not have the urgency factor that an emergency aid would. Okay. Thank you both.